

# In the United States Court of Federal Claims

No. 17-1598 C
Filed: April 6, 2018

FILED

APR - 6 2018

U.S. COURT OF
FEDERAL CLAIMS

```
*****************************************
                                        *
DIANE DANIELS,                          *
                                        *
        Plaintiff, pro se,              *
                                        *
v.                                      *
                                        *
THE UNITED STATES,                      *
                                        *
        Defendant.                      *
                                        *
*****************************************
```

**Diane Daniels**, San Diego, California, *pro se*.

**Eric E. Laufgraben,** United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER GRANTING THE GOVERNMENT'S MOTION TO DISMISS

**BRADEN,** *Chief Judge*.

### I.   RELEVANT FACTUAL BACKGROUND.[1]

On June 30, 1999, Dianne Daniels and Ellington Daniels executed a security instrument identified as a Deed of Trust to purchase real property, located at 6391 Medio Street, San Diego, California (the "Property").  Compl. ¶ 16; Compl. Ex. A at 1–7.  The Deed of Trust stated that ComUnity Lending, Inc. agreed to lend $175,440 to Mr. and Mrs. Daniels, in exchange for a security interest in the Property.  Compl. Ex. A at 2.  On July 2, 1999, the San Diego County Recorder's Office recorded the June 30, 1999 Deed of Trust.  Compl. Ex. A at 1–2.

---

[1]   The relevant facts were derived from the October 23, 2017 Complaint ("Compl.") and attached Exhibits ("Compl. Ex. A–I").

On February 23, 2015, Mr. Daniels executed a Homestead Declaration,[2] with the San Diego County Recorder's Office, that represented that the Property was owned in joint tenancy by Mr. and Mrs. Daniels. Compl. Ex. D at 1.

On June 2, 2016, Mrs. Daniels filed a Substitution Of Trustee And Full Reconveyance in the Superior Court of Lamar County, Georgia. Compl. Ex. B at 2. The June 2, 2016 Substitution Of Trustee And Full Reconveyance stated that Mrs. Daniels "desires to substitute a new Trustee under [the] Deed of Trust . . . instead of ComUnity Lending, Incorporated."[3] Compl. Ex. B at 2.

On July 6, 2016, Mr. and Mrs. Daniels filed an "Assignees Declaration Of Land Patent Update" in the Superior Court of Lamar County, Georgia. Compl. Ex. A-1 at 1. The July 6, 2016 Declaration stated that Mr. and Mrs. Daniels held a land patent, issued on July 12, 1876 by President Ulysses S. Grant. Compl. Ex. A-1 at 1. On July 7, 2016, the San Diego County Recorder's Office recorded the Substitution Of Trustee And Full Reconveyance. Compl. Ex. B at 2.

On June 2, 2017, Sheriffs from the San Diego County Sheriff's Department allegedly kidnapped Mrs. Daniels from the Property, that caused Mrs. Daniels physical and mental injury. Compl. ¶ 23. One Sheriff also allegedly "stomped on [Mrs. Daniels'] neck" and caused injuries to Mrs. Daniels' "body, face, neck, arms, back [,] . . . and wrist." Compl. ¶ 25. Thereafter, Mrs. Daniels was "imprisoned at Los Colinas [Detention Facility] for over 14 hours, until [she paid] $2,000 . . . on a $20,000 bond."[4] Compl. ¶ 25.

On an unspecified date thereafter, an agent of the Bank of New York, Inc. (the "Bank of New York") allegedly removed $100,000, jewelry valued at $175,000, and other personal property from the Property, and vandalized the security system on the Property. Compl. ¶ 25.

---

[2] The California Code of Civil Procedure provides that

[a] dwelling in which an owner or spouse of an owner resides may be selected as a declared homestead pursuant to this article by recording a homestead declaration in the office of the county recorder of the county where the dwelling is located. From and after the time of recording, the dwelling is a declared homestead for the purposes of this article.

CAL. CIV. PROC. CODE § 704.920 (West 2017).

[3] The October 23, 2017 Complaint does not state whether a new trustee was actually substituted in the Deed of Trust.

[4] The October 23, 2017 Complaint does not provide a reason for Mrs. Daniels' alleged arrest and subsequent imprisonment.

On June 9, 2017, Mrs. Daniels was "physically prevented from entering [the Property] as personal property was removed from her home, without consent, . . . [and was] threatened [that] if she returned to [the Property] she would be rearrested."[5] Compl. ¶ 25.

On June 28, 2017, Mrs. Daniels posted a Notice Of Right And Demand For Possession Of Property Located In San Diego County, notifying the "Bank of New York, and All Unknown Occupants" that they were required to "[r]elinquish [the Property]" to Mrs. Daniels. Compl. Ex. E.

## II.    PROCEDURAL HISTORY.

On October 23, 2017, Mrs. Daniels ("Plaintiff") filed a Complaint in the United States Court of Federal Claims against "[United States] Government employees," the Bank of New York, the United States District Court for the Southern District of California, the Superior Court of California, a number of private individuals, and "fictitiously named defendant[s]," alleging: (1) fraud; (2) misrepresentation; (3) breach of fiduciary duty; (4) kidnapping; (5) false imprisonment; (6) grand theft; (7) burglary; (8) conspiracy; (9) a violation of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*; (10) violations of the Fourth, Fifth, Fourteenth, and Sixteenth Amendments of the United States Constitution; (11) violation of the Sherman Act, 15 U.S.C. §§ 1 *et seq.*; (12) violation of the Clayton Act, 15 U.S.C. §§ 12–27; (13) violation of the 1848 Treaty of Guadalupe Hidalgo; (14) violation of a land patent; and (15) breach of contract. Compl. ¶¶ 1–62. On that same day, Plaintiff also filed a Motion For Leave To Proceed *In Forma Pauperis*, that the court granted on November 7, 2017.

On December 12, 2017, Plaintiff filed a Notice And Affidavit Of Obligation Of Commercial Lien that re-alleges several claims of the October 23, 2017 Complaint and states that Plaintiff seeks $7,000,034,818,577.23 in relief.

On December 22, 2017, the Government filed a Motion To Dismiss ("Gov't Mot."), pursuant to Rules of the United States Court of Federal Claims ("RCFC") 12(b)(1) and 12(b)(6).

On January 3, 2018, Plaintiff filed a letter addressed to the undersigned judge. On that same day, Plaintiff filed a Notice And Declaration, requesting a default judgment against the Government. On January 9, 2018, Plaintiff filed, under seal, an Affidavit Of Corporate Denial and an Affidavit Of Denial Of Contract And License Third Party Attorney. The January 9, 2018 Affidavit stated that, as a "sovereign," Plaintiff did not consent to federal government taxation, including social security and income taxation. On that same day, Plaintiff filed a Notice And Declaration, stating that the Government failed to respond to Plaintiff's December 12, 2017 Notice And Affidavit Of Obligation Of Commercial Lien ("Pl. Notice").

---

[5]    The October 23, 2017 Complaint does not state who threatened and prevented Mrs. Daniels from entering the Property on June 9, 2017.

### III.   DISCUSSION.

#### A.   Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which she relies "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting *Testan*, 424 U.S. at 400). Plaintiff must also make "a non-frivolous allegation that [the plaintiff] is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).

#### B.   Relevant Legal Standard.

##### 1.   Standard Of Review For A Motion To Dismiss Under RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading[.] But a party may assert . . . [,] by motion[,] lack of subject-matter jurisdiction[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

##### 2.   Standard Of Review For A Motion To Dismiss Under RCFC 12(b)(6).

A claim is subject to dismissal under RCFC 12(b)(6), if it does not provide a basis for the court to grant relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) ("[A well-pleaded complaint] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all the allegations in the complaint are

true (even if doubtful in fact)." (internal citations omitted)); *see also Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy.").

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations in a complaint also must establish that there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1062 (Fed. Cir. 2012) (holding that a complaint "require[s] more than labels and conclusions"). To determine whether a complaint states a plausible claim for relief, the court must engage in a context-specific analysis and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Therefore, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

### 3.    Standard Of Review For *Pro Se* Litigants.

*Pro se* plaintiffs' pleadings are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). The United States Court of Federal Claims traditionally examines the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted *pro se* in the drafting of [the] complaint may explain its ambiguities, but it does not excuse its failures, if such there be.").

A *pro se* plaintiff, however, is not excused from his burden of proving, by a preponderance of the evidence, that the court possesses jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("[The plaintiff] must allege in [the complaint] the facts essential to show jurisdiction."); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[The *pro se* plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence."). The *pro se* plaintiff cannot rely solely on conclusory allegations in the complaint, but must allege "competent proof" to establish jurisdiction. *McNutt*, 298 U.S. at 189; *see also Reynolds*, 846 F.2d at 748 ("[I]t was incumbent upon [the *pro se* plaintiff] to come forward with evidence establishing the court's jurisdiction."); *Zulueta v. United States*, 553 F. App'x 983, 985 (Fed. Cir. 2014) ("[T]he leniency afforded to a [*pro se*] litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." (quotation marks omitted)).

### C.    The Government's December 22, 2017 Motion To Dismiss.

#### 1.    The Government's Argument.

The Government argues that the United States Court of Federal Claims does not have jurisdiction to adjudicate the claims alleged in the October 23, 2017 Complaint, because the October 23, 2017 Complaint does not allege a claim arising under a money-mandating source of law and does not allege sufficient facts to demonstrate a breach of contract with the United States. Gov't Mot. at 4–9. Specifically, the United States Court of Federal Claims does not have subject matter jurisdiction to adjudicate the claims alleged in the October 23, 2017 Complaint arising under: (1) tort law; (2) criminal law; (3) the Truth in Lending Act; (4) the Sherman Act; (5) the Clayton Act; (6) the Fourth, Fifth, Fourteenth, and Sixteenth Amendments of the United States Constitution; (7) the 1848 Treaty of Guadalupe Hidalgo; (8) violation of a land patent; and (9) breach of contract between private parties. Gov't Mot. at 4–8. In addition, to the extent the October 23, 2017 Complaint alleges a breach of contract by the United States, this allegation does not state a claim on which relief can be granted, because it fails to plead the necessary elements of a breach of contract claim. Gov't Mot. at 8–9.

#### 2.    Plaintiff's Response.

On January 9, 2018, Plaintiff filed a Notice And Declaration, that stated

> [a]ny papers received after my Affidavit of Obligation Commercial Lien submitted into the Court record, must be sent back refused for failure in REBUTTAL of my Affidavit. Any[]one that respon[ds] to the Affidavit must respond by Affidavit, rebutted point for point, with unlimited liability, and signed under penalty [of] perjury; that has never been done by any of the named defendants, and [Counsel for the Government] not a party to this case, commits FRAUD [by trying] to become a party to this case without consent, no contract. My Affidavit to date remains unrebutted. Denial of Contract and License Third party Attorney on file with the Court.

Pl. Notice at 7.

Plaintiff's January 9, 2018 Notice also includes a copy of the Government's December 22, 2017 Motion To Dismiss with the following hand-written message on the first page: "VOID no contract[.] Returned for cause, without commercial dishonor and no recourse[.] Affidavit remains unrebutted[.] Where is the Consent?" Pl. Notice at 9.

### IV.    THE COURT'S RESOLUTION.

The United States Court of Federal Claims does not have jurisdiction to adjudicate claims brought against private parties. *See* 28 U.S.C. § 1491(1)(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States[.]"); *see also United States v. Sherwood*, 312 U.S. 584, 789 (1941) (holding that the jurisdiction of the

United States Court of Federal Claims is "narrowly restricted to the adjudication of suits brought against the Government alone"); *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act grants the [United States] Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials.").

In this case, the October 23, 2017 Complaint identifies the United States in the case caption, but does not explicitly allege any claims against the United States. Compl. ¶¶ 1–62. Instead, the October 23, 2017 Complaint alleges only claims against the Bank of New York, certain Sheriffs of the San Diego County Sheriff's Department, and "other named defendants."[6]   Compl. ¶¶ 54–62.

For these reasons, to the extent that the October 23, 2017 Complaint alleges claims against private parties and not the United States, those claims are dismissed, pursuant to RCFC 12(b)(1). To the extent that the October 23, 2017 Complaint alleges claims against the United States, the court addresses these claims below.

> ### A.   The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate The Tort Claims Alleged In The October 23, 2017 Complaint.

The Tucker Act provides that the United States Court of Federal Claims does not have jurisdiction to adjudicate claims "sounding in tort." *See* 28 U.S.C. § 1491(a)(1); *see also Keene Corp. v. United States*, 508 U.S. 200, 214 (1993) ("The [United States] Court of Federal Claims is a court of limited jurisdiction. It lacks jurisdiction over tort actions against the United States."). Rather, the Federal Torts Claims Act grants jurisdiction to hear tort claims brought against the United States exclusively to United States district courts. 28 U.S.C. § 1346(b)(1).

In this case, the October 23, 2017 Complaint alleges claims sounding in tort, including fraud, misrepresentation, breach of fiduciary duty, kidnapping, and false imprisonment. Compl. ¶¶ 2, 10, 14, 16, 21–27, 29–30, 37, 53–61. But, the court does not have jurisdiction to adjudicate claims "sounding in tort." *See* 28 U.S.C. § 1491(a)(1).

For these reasons, the tort claims alleged in Paragraphs 2, 10, 14, 16, 21, 22, 23, 24, 25, 26, 27, 29, 30, 37, 53, 54, 55, 56, 57, 58, 59, 60, and 61 of the October 23, 2017 Complaint are dismissed, pursuant to RCFC 12(b)(1).

---

[6]   The October 23, 2017 Complaint also identifies the United States District Court for the Southern District of California, the Superior Court of California, the County of San Diego, "Richard Realty Groups#01705437," "SLS," and "America's Wholesale Lender," but the October 23, 2017 Complaint does not allege claims against these entities. Compl. ¶¶ 5–7, 18–19, 23, 32, 37, 54–62.

**B.**  **The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate The Criminal Claims Alleged In The October 23, 2017 Complaint.**

The United States Supreme Court has held that the United States Court of Federal Claims does not have jurisdiction to adjudicate claims arising under a state criminal code. *See Mitchell,* 463 U.S. at 215–18 ("Claims founded on state law are . . . outside the scope of the limited jurisdiction of the [United States] Court of Federal Claims."). And, the United States Court of Appeals for the Federal Circuit has held that the United States Court of Federal Claims does not have jurisdiction to adjudicate claims arising under the federal criminal code. *See Joshua v. United States,* 17 F.3d 378, 379 (Fed. Cir. 1994) (holding that the United States Court of Federal Claims "has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code").

In this case, the October 23, 2017 Complaint alleges claims arising under federal and state criminal codes, including grand theft, burglary, and conspiracy. Compl. ¶¶ 7, 14, 16, 23, 25, 28, 29, 32, 36–37, 55, 57–59, 61–62. But, the court does not have jurisdiction to adjudicate criminal claims. *See Mitchell,* 463 U.S. at 215–18; *Joshua,* 17 F.3d at 379.

For these reasons, the criminal claims alleged in Paragraphs 7, 14, 16, 23, 25, 28, 29, 32, 36, 37, 55, 57, 58, 59, 61, and 62 of the October 23, 2017 Complaint are dismissed, pursuant to RCFC 12(b)(1).

**C.**  **The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate The Truth In Lending Act Claim Alleged In The October 23, 2017 Complaint.**

The United States Supreme Court has held that the Tucker Act does not create a substantive cause of action. *See Mitchell,* 463 U.S. at 216 (holding that "the Tucker Act does not create any substantive right enforceable against the United States for money damages" (internal quotation marks omitted)). In order to come within the jurisdictional reach of the wavier of sovereign immunity in the Tucker Act, the plaintiff must identify a separate source of substantive law that creates the right to money damages. *See id.* ("A substantive right must be found in some other source of law, such as 'the Constitution, or any Act of Congress, or any regulation of an executive department.'" (quoting 28 U.S.C. § 1491(a)(1))).

In this case, the October 23, 2017 Complaint alleges a violation of the Truth in Lending Act. Comp. ¶¶ 10, 30. But, the Truth in Lending Act "create[s] no private right of action enforceable against the federal government for money damages." *See Wilson v. United States,* 404 F. App'x 499, 501 (Fed. Cir. 2010) (holding that the Truth in Lending Act is not money-mandating within the meaning of the Tucker Act).

For these reasons, the claim brought under the Truth in Lending Act alleged in Paragraphs 10 and 30 of the October 23, 2017 Complaint is dismissed, pursuant to RCFC 12(b)(1).

**D.**   **The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate The Claims Alleged In The October 23, 2017 Complaint Arising Under the Fourth, Fifth, Fourteenth, and Sixteenth Amendments Of The United States Constitution.**

The United States Court of Appeals for the Federal Circuit has held that, "[b]ecause monetary damages are not available for a Fourth Amendment violation, the [United States] Court of Federal Claims does not have jurisdiction over such a violation." *See Brown*, 105 F.3d at 623–24. The United States Court of Appeals for the Federal Circuit has also held that "the Due Process [C]lauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." *See Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013); *see also Spain v. United States*, 277 F. App'x 988, 989 (Fed. Cir. 2008) ("the Due Process Clauses of the Fifth and Fourteenth Amendments [and] the Equal Protection Clause of the Fourteenth Amendment" are not money-mandating). And, this court has previously determined that the United States Court of Federal Claims does not have jurisdiction to adjudicate claims arising under the Sixteenth Amendment. *See Russell v. United States*, 78 Fed. Cl. 281, 288 (Fed. Cl. 2007) ("The court does not perceive how the [Sixteenth A]mendment[,] authorizing the government to collect taxes[,] could possibly constitute a source mandating the payment of money to [the] plaintiff.").

In this case, the October 23, 2017 Complaint alleges violations of the Fourth Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, the Equal Protection Clause of the Fourteenth Amendment, and the Sixteenth Amendment of the United States Constitution. Compl. ¶¶ 3, 22–23, 53–54, 56–57, 61.

For these reasons, the constitutional claims alleged in Paragraphs 3, 22, 23, 53, 54, 56, 57, and 61 of the October 23, 2017 Complaint are dismissed, pursuant to RCFC 12(b)(1).

**E.**   **The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate The Antitrust Claims Alleged In The October 23, 2017 Complaint.**

To establish jurisdiction in the United States Court of Federal Claims, a plaintiff must identify a money-mandating source of law, because "the Tucker Act does not create any substantive right enforceable against the United States for money damages." *See Mitchell*, 463 U.S. at 216 (internal quotation marks omitted). But, the Sherman Act is not a money-mandating statute. *See* 15 U.S.C. § 1 *et seq.*; *see also Akinro v. United States*, 91 Fed. Cl. 650, 655 (Fed. Cl. 2010) ("Neither the Sherman [] Act, 15 U.S.C. § 1 *et seq.*, nor specifically 15 U.S.C. § 17 . . . , are money-mandating statutes."). And, claims under the Clayton Act are similarly outside the court's jurisdiction, because they are within the exclusive jurisdiction of United States district courts. *See Hufford v. United States*, 87 Fed. Cl. 696, 703 (Fed. Cl. 2009).

In this case, the October 23, 2017 Complaint alleges a violation of the Sherman Act and the Clayton Act. Compl. ¶¶ 28, 35, 36. But, the United States Court of Federal Claims "does not have jurisdiction to hear claims under the Sherman Act," because that Act is not a money-

mandating source of law. *See Akinro*, 91 Fed. Cl. at 655. And, "[c]laims for violations of the antitrust laws are not within the scope of the Tucker Act." *See Smith v. United States*, 34 Fed. Cl. 313, 321 (Fed. Cl. 1995).

For these reasons, the antitrust claims alleged in Paragraphs 28, 35, and 36 of the October 23, 2017 Complaint are dismissed, pursuant to RCFC 12(b)(1).

**F.    The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate The Claims Alleged In The October 23, 2017 Complaint Arising Under The 1848 Treaty Of Guadalupe Hidalgo.**

In 1851, Congress passed legislation that established a board of commissioners to resolve claims under the 1848 Treaty of Guadalupe Hidalgo.[7] *See* Act to Settle Private Land Claims in California §§ 9, 13, 9 Stat. 631 (1851); *see also Beard v. Federy*, 70 U.S. 478, 478 (1865) ("Congress, by act of 3d March, 1851, 'to ascertain and settle the private land claims' in that State[,] constituted a board of commissioners, in the nature of a judicial body, before which, claims to land there were to be investigated."). The Act required that plaintiffs alleging claims under the Treaty must do so within two years from enactment, and provided that review of the board of commissioners' decisions was within the exclusive jurisdiction of the United States district courts. *See* Act to Settle Private Land Claims in California §§ 9, 13, 9 Stat. 631 (1851); *see also Beard*, 70 U.S. at 478 ("[The Act] declares moreover 'that all lands, the claims to which shall not have been presented to the said commissioners within *two years after the date of the act*, shall be deemed, held, and considered as part of the public domain of the United States.'" (emphasis added)).

In this case, the October 23, 2017 Complaint alleges a violation of the 1848 Treaty of Guadalupe Hidalgo, but fails to explain why the court has jurisdiction, when Congress established a separate administrative scheme for claims brought under the Treaty, and when such claims were required to be brought over 160 years ago. Compl. ¶¶ 2, 53, 61.

For these reasons, the claim alleging a violation of the 1848 Treaty of Guadalupe Hidalgo in Paragraphs 2, 53, and 61 of the October 23, 2017 Complaint is dismissed, pursuant to RCFC 12(b)(1).

**G.    The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate The Land Patent Claim Alleged In The October 23, 2017 Complaint.**

A land patent passes all rights and control of public land from the United States to a private owner. *See United States v. Schurz*, 102 U.S. 378, 395–96 ("Congress . . . enacted a system of laws by which rights to [public] lands may be acquired, and the title of the [G]overnemnt conveyed

---

[7] The 1848 Treaty of Guadalupe Hidalgo established peace between the United States and Mexico. *See* Peace, Friendship, Limits and Settlement (Treaty of Guadalupe Hidalgo), United States-Mexico, arts. XII, XVI, Feb. 2, 1848, 9 Stat. 222. Under the Treaty, Mexico ceded all lands now included in the State of California to the United States for payment to Mexico of $15 million. *See id.*

to the citizen."). The court has previously determined that the United States Court of Federal Claims does not have jurisdiction to adjudicate a claim by a "sovereign citizen" alleging rights under a purported land patent. *See Startup v. United States*, No. 15-262L, 2015 WL 6386533, at *2 (Fed. Cl. Oct. 21, 2015) ("This [land patent] claim is . . . outside the [c]ourt's jurisdiction, because [the plaintiff] does not identify any statute that would give this [c]ourt jurisdiction to review actions taken by the [federal agency] and because the [c]ourt lacks jurisdiction under the Tucker Act to grant equitable relief except as incidental to a grant of money damages." (citing *Nat'l Air Traffic Controllers Assoc. v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998))).

The October 23, 2017 Complaint alleges a violation of a land patent. Compl. ¶¶ 2, 11–12, 14, 16, 23, 29, 39–42. In addition, Exhibit A-1 of the October 23, 2017 Complaint, entitled "Assignees Declaration Of Land Patent Update," alleges that Plaintiff and Mr. Daniels hold a land patent issued on July 12, 1876 by President Ulysses S. Grant. Compl. Ex. A-1 at 1. Holding a land patent, like any ownership interest in property, however, is not sufficient on its own to give rise to a cause of action. A claim related to a land patent requires the complaint to identify a substantive source of law that has been violated. *See Startup*, 2015 WL 6386533, at *2. For example, a land patent holder may allege that his or her property was taken by the United States, in violation of the Fifth Amendment to the United States Constitution. But, neither the October 23, 2017 Complaint nor Exhibit A-1 of the October 23, 2017 Complaint allege any source of substantive law that has been violated in relation to Plaintiff's land patent. Compl. ¶¶ 2, 11–12, 14, 16, 23, 29, 39–42.

For these reasons, the land patent claim alleged in Paragraphs 2, 11, 12, 14, 16, 23, 29, 39, 40, 41, and 42 in the October 23, 2017 Complaint is dismissed, pursuant to RCFC 12(b)(1).

### H.   The October 23, 2017 Complaint Does Not Allege Sufficient Facts To State A Contract Claim On Which Relief Can Be Granted.

To state a contract claim on which relief can be granted, the complaint "must allege either an express or an implied-in-fact contract, and the breach of that contract." *See Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). "The general requirements for a binding contract with the United States are identical for both express and implied[-in-fact] contracts." *Id.* As a matter of law, an implied-in-fact contract is "inferred . . . from [the] conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *See Balt. & Ohio R.R. v. United States*, 261 U.S. 592, 597 (1923). An implied-in-fact contract requires the court to find that "surrounding circumstances" show: (1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) actual authority on the part of the Government representative to bind the Government in contract. *See City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990). In other words, "the requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs." *See Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003).

In this case, the October 23, 2017 Complaint does not allege that an express contract was formed between Plaintiff and the United States. Compl. ¶¶ 1–62. The October 23, 2017 Complaint, however, alleges a breach of a contract with the Bank of New York and "other named defendants," but fails to allege any of the required elements to establish contract formation, *i.e.*, mutuality of intent to contract, consideration, lack of ambiguity in offer and acceptance, and actual

authority of the Government representative to bind the Government in contract.  Compl. ¶¶ 54–55, 61; *see also City of El Centro*, 922 F.2d at 820.  Therefore, Paragraphs 11, 22, 23, 28, 31, 37, 43, 53, 54, 55, and 61 of the October 23, 2017 Complaint do not allege sufficient facts to state a contract claim on which relief can be granted.

For these reasons, the court has determined that, even if the October 23, 2017 Complaint established jurisdiction as to the contract claim alleged in Paragraphs 11, 22, 23, 28, 31, 37, 43, 53, 54, 55, and 61 of the October 23, 2107 Complaint, those allegations fail to state a claim on which relief can be granted and must be dismissed under RCFC 12(b)(6).

## V.     CONCLUSION.

For these reasons, the court grants the Government's December 22, 2017 Motion To Dismiss.  *See* RCFC 12(b)(1) and 12(b)(6).  Accordingly, the Clerk of the United States Court of Federal Claims is directed to enter judgment on behalf of the Government.

**IT IS SO ORDERED.**

_____
**SUSAN G. BRADEN**
**Chief Judge**